**In re The HUB OF MILITARY CIRCLE, INC., a Virginia corporation, aka The Hub, Debtor.**

**Bankruptcy No. 81–00518–N.**

United States Bankruptcy Court,
E. D. Virginia,
Norfolk Division.

April 14, 1982.

Michael H. Nuckols, Jett, Agelasto, Berkley, Furr & Price, Norfolk, Va., for debtor.

Benjamin C. Ackerly, Hunton & Williams, Richmond, Va., for Equitable Life Assurance Society of the United States.

## ORDER APPROVING ASSUMPTION OF UNEXPIRED LEASE

HAL J. BONNEY, Jr., Bankruptcy Judge.

For the reasons set forth on the record, the Court approves assumption of the unexpired lease by the debtor.

An oral recitation with an order drafted by the prevailing party might otherwise suffice; however, this being a novel issue before the Court, we wish to comment on certain aspects for future reference and guidance. The purposes here, therefore, are thusly limited. In particular, we address the issue of *adequate assurance of future performance.*

The Hub is a clothing store in a large, popular area mall, Military Circle Shopping Center, owned by the Equitable Life Assurance Society of the United States. All rents due the landlord are current and The Hub will cure any defaults for any actual pecuniary losses suffered by Equitable.

Equitable opposes assumption of the favorable unexpired lease of The Hub in Military Circle on the grounds it would not be adequately assured of future performance under the lease as mandated by 11 U.S.C. § 365.

Kindly note that we treat here *adequate assurance* and not *adequate protection.*

Equitable feels that The Hub will not be able to pay and that the percentage of rent provided for under the lease [upon gross sales] will substantially decline.

Obviously, adequate assurance could take many forms, the best of which would be rent paid in advance or a deposit. Usually the ailing in Ward 11 are unable to do this. Beyond the devoutly to be wished are, we suggest, these inquiries:

1. What is the present status of the debtor's obligations under the lease?

2. Does the lease have a significant term remaining?

3. Overall, what are the prospects for rehabilitation or reorganization?

4. Precisely and reasonably, what can the landlord look to for sufficient insurance [adequate assurance] of performance under the lease?

The answers:

1. As stated above, The Hub is current on all rent and has pledged cure for actual pecuniary losses on such items as interest and attorneys fees when these can be determined.

2. The lease runs to 1990 and contains options for extensions. It is worthwhile to seek assumption of it.

3. Several factors would indicate a reasonable prospect for rehabilitation or reorganization. Most important, the debtor has a reliable source of quality merchandise. The cupboards were bare, initially, but have been stocked by Quality Clothes, Inc., under favorable terms. Further, the sales projections are healthy and, indeed, actual sales of late have exceeded projections.

4. Equitable can look to a better performance story, healthy and nonexaggerated projections and swift relief from this Court should The Hub fail to perform. Ah, the last might be the best assurance of all.

The debtor has been told that it is expected to timely meet its obligations under the lease. Upon the first default, the landlord should bounce the tenant back in court. The parties know a quick hearing can be had. The debtor has had all of the loose rope it will get. If it cannot pay the rent henceforth, it ought to go out of business. This is called "under the gun" assurance.

462

**Dictum:** Another form of adequate assurance would be rent in advance. This approach has been utilized by us in utility cases where, for example, a week's electric or telephone average charge would be paid in advance on Monday morning by cash or certified check. If not made, the utility is granted leave to pull the plug without further order of the Court.

Something must be said about Equitable's contention that based upon the track record its percentage rent will be down. Well, that is the risk of the market with any tenant. If a certain store is overstocked with Lightning Bolts and lightning strikes and they go out of style, sales will decline and the landlord, too, will feel this. The same would hold true for any economic slump. All of which is to say, there are many non-bankruptcy factors that would also affect sales.

The solution, Watson, is to provide a high enough basic rent in the lease. As they say at the track, risks go with the percentages.

IT IS ORDERED that assumption of the unexpired leases of the debtor be, and it hereby is, approved.